## APPEAL OF THE TREGO COUNTY COOPERATIVE ASSOCIATION.

Docket No. 2137.   Promulgated May 10, 1927.

Fixed dividends paid by a cooperative corporation are not deductible by the corporation.

*Robert H. Worline, Esq.*, and *Alexander C. Johnson, C. P. A.*, for the petitioner.
*Briggs G. Simpich, Esq.*, for the Commissioner.

This appeal is from the determination of deficiencies in income taxes of $231.57 and $5,945.97 for the fiscal years ended June 30, 1918 and 1919, respectively. The petitioner claims deductions of so-called patronage dividends and of fixed payments on capital stock.

### FINDINGS OF FACT.

The petitioner was incorporated under the laws of Kansas in 1914. Its principal office is at Wakeeney, Kans. It has elevators at Wakeeney, Collyer and Voda, and maintained general stores at Wakeeney and Voda.

The purposes of the corporation are set forth in its charter as follows:

The conversion of all agricultural products by means of mills, elevators, warehouses or stores. Buying and selling of grain for profit. Manufacturing and marketing of dairy products, buying and selling of coal, flour, feed farm supplies, live stock and other merchandise for the shareholders and members of the F. E. & C. Union.

The corporation was organized by farmers for the purposes of disposing of their products, creating a saving on the purchase and sale of goods, and cutting the margin of profit taken by the old companies in marketing produce. Only farmers are stockholders and members in the corporation. The organization of the corporation had the effect of raising the market price of wheat, 5 to 7 cents a bushel, in the localities where the company operated.

The by-laws of the corporation in effect during the taxable years involved, in addition to stating the purposes of the corporation as set forth above, contain, among others, the following provisions:

### ARTICLE III.

SEC. 1.—The office and place of business of this association shall be at Wakeeney and such other places as the directorate shall decide.

SEC. 2.—The business shall be conducted on a ware house basis, the warehouses to be located at points most convenient to the members.

SEC. 3.—These warehouses shall be bought, built or rented as the directors see fit.

### ARTICLE IV.

Eligibility to membership in this Association shall consist as follows:

SEC. 1.—Membership in good standing in the F. E. & C. Union.

SEC. 2.—Subscription for at least one share of this Association's capital stock.

SEC. 3.—And in signing of the name and place of residence of the applicant to these by-laws.

### ARTICLE VII.

After the payment of the operating expenses of this association from the remaining profits, if any, two per cent shall be kept in the treasury and carried on the books as a reserve fund for the payment of any unexpected losses, not otherwise provided for; the reserve fund may be invested or loaned to stockholders, provided a part of said fund may be used in payment of interest on capital stock, at the discretion of the directors.

### ARTICLE VIII.

SEC. 1.—The capital stock of this Association shall be $25,000 to be divided into 2500 shares of $10.00 each, and at least twenty per cent of the face of all shares subscribed shall be paid for in cash and in case of deferred payments such payments shall be settled for in full by note, secured by the capital stock for which said note is taken as part payment.

SEC. 2.—All shall be negotiable and transferable at the option of the holder and on approval of directors, and all transfers must be recorded on the books of the Association.

SEC. 3.—Certificates of stock shall be numbered and registered in the order in which they are issued, and shall be signed by the president, secretary, and the seal of the company impressed on each of the certificates.

### ARTICLE IX.

After the reserve fund is deducted from the profits, interest at the rate of eight per cent on all capital stock shall be paid, but no interest shall be paid

on any shares of stock that are not paid up in full at the time of annual settlement, and interest shall be paid only from and after date when said shares are paid in full, all interest to become due and payable on and after the annual settlement. All profits accruing above interest and actual operating expenses shall be prorated back to each share holder in proportion to the amount of business done by said share holder. This article to apply to shares bought under Article XXVI of these by-laws.

### ARTICLE XII.

SEC. 1.—All money received on shares, contributions, or otherwise shall be paid to the treasurer unless otherwise ordered by the directors and said money shall be withdrawn only by vote of the board of directors on the written order of the president countersigned by the Secretary.

SEC. 2.—Such funds as the Association may have, not needed for immediate use in said Association's business or to meet accruing liabilities, shall, with the consent of the association, given at any regular meeting, be invested by the directors.

SEC. 3.—The business of this association shall be conducted on a cash basis.

SEC. 4.—The business agent shall keep a sales book showing a correct list of all sales, the amount and price of said sales, the name of purchaser and the kind of goods sold.

### ARTICLE XVII.

Upon the decease of any member of the Association, the directors may repay to his legal representatives the face value of the entire stock, less arrearages, owned by said member at the time of his death, together with all accrued interest and purchase dividends, within twelve months after decease of said member.

### ARTICLE XVIII.

Every member of this Association shall be entitled to but one vote regardless of the number of shares owned by him or her.

### ARTICLE XX.

The Board of Directors shall appoint a manager of the business who with the consent of the directors may hire or discharge such help as he shall deem necessary but all salaries shall be approved by the board of directors. The manager shall have power to sign or endorse the name of this association to any draft checks necessary to the business of said association but no power to sign name of company to any accommodaton of security whatsoever.

### ARTICLE XXI.

The business agent shall draw a salary such as the board of directors shall decide.

### ARTICLE XXII.

The business agent may be removed at any time by a majority vote of all the stock holders.

### ARTICLE XXVI.

Any person who is unable to pay for at least one share of capital stock of this Association on the terms named in Article VIII may at the discretion of

the directors purchase one share on account, said share to be held by the treasurer and issued to the purchaser when the dividends on his purchases shall amount to the face value of said share. Provided (1) That said purchaser of dependent share shall not be entitled to vote until said share is paid for in full; (2) That said dependent share shall be paid for on or before two years from date of said share, either by accrued dividends on purchases or by other means.

The 8 per cent return to the stockholders established by Article IX of the by-laws was fixed at that rate for the reason that it was the legal rate of interest which it would have been necessary to pay if the money had been borrowed. It was considered as an expense of the corporation.

The capital stock of the corporation, when organized, consisted of 500 shares with a par value of $10 each. In March, 1915, the stock was increased to 1,500 shares; in September, 1915, to 3,000 shares; in January, 1917, to 7,500 shares; in December, 1919, to 12,500 shares; and in May, 1921, to 25,000 shares.

The "F. E. and C. Union" is the Farmers Educational and Co-operative Association, made up of members of various farmers' organizations in the United States and Canada.

The corporation purchased produce from its members and, when facilities were available, it purchased from nonmembers. The prevailing market price for the product in the particular locality was paid both members and nonmembers. In addition to the purchase and resale of farm produce, it dealt in groceries, farm machinery, coal and general merchandise, not only with its members but with the general public.

Nonmembers sold their produce to the corporation to secure the advantage of the increased prices paid, and because they knew it promoted a higher price in the market. The corporation dealt with the nonmembers with the hope of inducing them to become members and for the purpose of making a profit on their business.

A complete record was kept of all purchases from and sales to members during each year.

All the business of the corporation is conducted by a business manager who is not a member of the association. The officers of the corporation have no active part in the management of the business and they draw no salary as such, but are paid a per diem fee of $5 for each day they are in attendance at board meetings.

During the years involved the corporation, after deducting from its gross earnings from all sources the rental, clerk hire and other expenses of operating, made the 8 per cent payment to stockholders as required by the by-laws on the basis of the amount of stock owned by each stockholder. The balance still remaining was prorated among the stockholders in proportion to the amount of business done by each during the year. No distribution was made to nonmembers.

Earnings from the different departments were carried direct to surplus, and the 8 per cent payments and pro rata distribution were charged direct to surplus.

Tax has always been paid on the income derived from nonmember business.

OPINION.

MORRIS: The respondent in his answer admits that the proportion of the patronage dividends paid to stockholders during the fiscal year 1919 computed on the following basis is an allowable deduction for that year:

First compute the apparent net income of the corporation. From this amount deduct the fixed dividend paid or payable on any outstanding capital stock. The amount of such fixed dividend is the portion of net income properly attributable to the investment made in the corporation by the holders of any outstanding capital stock. The balance consists of (1) the amount available for refund to the members of the association and (2) the profits made from non-members. In the absence of evidence to the contrary it will be assumed that the dealings with members and non-members are equally profitable, and, accordingly, that the amount available for refund consists of that proportion of the apparent net profits, after deducting the fixed dividend on outstanding capital stock, which the amount of business transacted with members bears to the entire amount of business transacted. Up to the amount available for refund, thus computed, a distribution by a cooperative association to its members, upon the basis of the business transacted with them, will be deemed to be a true patronage dividend, deductible by the association in computing its taxable net income for the Federal income and profits tax purposes.

In view of that admission the only question left for our consideration is whether the 8 per cent fixed dividends on capital stock may be deducted in determining net income. In the *Appeals of Sacred Heart Cooperative Mercantile Co.*, 2 B. T. A. 24, and *Farmers Cooperative Assn.*, 5 B. T. A. 61, we held that such dividends are not deductible, and those decisions are controlling here.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

LANSDON not participating.