OPINION. Kern, Judge: This case involves income and excess profits taxes for the petitioner’s fiscal years ended October 31, 1937, 1938, and 1939. The ultimate question here is whether certain “patronage dividends” and “patronage refunds” constitute a part of the gross income of the petitioner, or are, in reality, not the property of petitioner but of its several “patrons.” There is no question involved of “deductions” in the technical sense of the statute, for the petitioner’s claim is the broad one that it is an agricultural cooperative, doing business not for its own profit but for the cheaper buying of agricultural and other goods by its members and, as such, is a mere conduit of their moneys. Incidental to the question of merit is that of the delinquency penalties demanded by respondent, which will attach if we hold for respondent on the essential question.. Petitioner makes no contention that it is exempt from taxation; it merely contends that because of the nature of its organization and operation tfie amounts distributed to its patrons are not properly in-cludible in its taxable income. The first question, therefore, which confronts us in our consideration of this case is whether petitioner is organized and operated as an agricultural cooperative association, on a cooperative basis. It is true that it was incorporated under the Indiana General Corporation Act, but this, of itself, is not controlling. Eugene Fruit Groupers Association, 37 B. T. A. 993. Petitioner was organized under this act rather than under the Indiana Cooperative Marketing Law because under the latter at least nine incorporators were necessary, whereas petitioner at the time of its incorporation had only three members. Regardless of the form of organization used to bring petitioner into legal being, in reality it was organized as a cooperative purchasing association and operated as such. Its purpose was and is to furnish “on a cooperative basis,” and without profit to itself, farm supplies and equipment to its member agricultural cooperative associations and through them to farmers. Most of its business was transacted with its members, but even the nonmembers with whom it dealt were, for the most part, agricultural cooperative associations and shared equally with members the patronage dividends or refunds made by it. That it was petitioner’s intention to operate on a cooperative basis is also borne out by the following additional facts: The member stockholders were each equally represented on the board of directors, regardless of the amount of stock held; the return on its invested capital is limited to 8 percent; each member-stockholder has only one vote, regardless of the number of shares held; the capital necessary to the conduct of petitioner’s business is furnished by its members in proportion to the member’s patronage. Having decided that petitioner is, in substance and reality, organized and operated as an agricultural cooperative association on a cooperative basis, it would follow in the usual case that the so-called patronage dividends would be treated for tax purposes by the Treasury Department as rebates upon the business transacted with its members, and would therefore be excluded from gross income in computing net income subject to tax. I. T. 1499, C. B. 1-2, p. 191; L. M. 2288, C. B. III-2, p. 236; L. M. 2595, C. B. III-2, p. 238; G. C. M. 12393, C. B. XII-2, p. 398; G. C. M. 17895, C. B. 1937-1, p. 56; I. T. 3208, C. B. 1938-2, p. 127. This administrative practice has been sanctioned by the decisions of this Court. See Midland Gooferative Wholesale, 44 B. T. A. 824, 830. However, this practice of excluding patronage dividends from gross income has been limited to those cases in which the right of patrons to such dividends arises by reason of the corporation charter, or bylaws, or some other contract, and does not depend upon some corporate action taken subsequent to its receipt of the money later so distributed, such as the action of the corporation’s officers or directors. This limitation recognizes that if the money later distributed to patrons is received by the corporation without a legal obligation existing at the time of its receipt to later distribute it, it must be considered as the gross income of the corporation and, since there is no deduction permitted by statute of the amounts later distributed to patrons, it is taxable as such. See Midland Gooferative Wholesale, supra; Fruit Growers Suffly Co., 21 B. T. A. 315; affd., 56 Fed. (2d) 90. Therefore, we must first determine whether additional corporate action is required to be taken before petitioner becomes definitely liable to pay so-called patronage dividends to its members and patrons. Such a liability can arise from the corporate bylaws. Farmers Union Cooperative Association, 13 B. T. A. 969; See also Midland Cooperative Wholesale, supra. After a careful consideration of petitioner’s charter and bylaws, we conclude that petitioner’s patrons were entitled as of right to a distribution of petitioner’s net income as defined by article VI of its bylaws as so-called patronage dividends without further corporate action on petitioner’s part, and that the corporate resolutions set out in our findings merely recognized and confirmed the rights which the patrons already had, in so far as they refer to the net income of petitioner available for distribution to its patrons after the payment of dividends on petitioner’s common stock. These rights existed in nonmembers as well as members, since it is obvious from the record that nonmembers dealt with petitioner with the knowledge of and in reliance on the bylaws of petitioner providing for “patronage dividends.” See 18 Corpus Juris Secundum, p. 593. After concluding as we have done that petitioner’s patrons were entitled by reason of its charter and bylaws to so-called patronage dividends without further corporate action on its part, there still remains the question of whether its patrons were thus entitled to all of the patronage dividends here involved in the total amounts deducted by petitioner from its taxable income. Under article VT of petitioner’s bylaws, the board of directors could cause the payment of dividends on the outstanding common stock in amounts not exceeding 8 percent of the par value thereof and could cause the payment to a reserve for depreciation of “such amount as the board of directors shall determine but not less than an amount equal to five per centum of the cost price of all property * * * subject to depreciation.” The patrons of petitioner were entitled by the terms of section 6 of article VI of the bylaws to “all the net income of this corporation remaining after meeting the foregoing provisions of this article,” referring to those provisions which authorized the payment of dividends ¡pid payments to the reserve for depreciation, as well as other payments. Thus the amounts to be distributed to patrons pursuant to the petitioner’s bylaws could not be ascertained until after the petitioner’s board of directors had acted with regard to dividends and reserve, or had refrained from acting. If, for example, the board of directors authorized the payment of 8 percent dividends on the common stock, the net income to be distributed to its patrons would be correspondingly diminished. On the other hand if the directors determined that no dividends should be paid on its stock and therefore took no action with regard to declaring such dividends, the patrons were entitled to all of the net income of petitioner. The right of the petitioner corporation to allocate a part of its receipts to a reserve for depreciation need not concern us. The establishment and maintenance of a depreciation reserve and periodic additions thereto in reasonable amounts constitute a proper operational expense, and the net income of petitioner available under its bylaws for distribution to its patrons would have been calculated by subtracting from gross income the amounts reserved for depreciation even without the express provisions of article VI of the bylaws. However, the right of petitioner’s board of directors to declare dividends upon its common stock is radically different. These dividends, if paid, would be paid out of net income. If dividends were not paid, then the net income of petitioner available for distribution to its patrons would be accordingly greater. The choice of whether so much of its net income as equaled 8 percent of the par value of its common stock should be distributed to its stockholders as a dividend or to its patrons as rebates was in the corporation. Therefore, it can not be said that all of the money eventually distributed to its patrons as so-called patronage dividends was received by petitioner with a legal obligation existing at the time of its receipt to later so distribute it. We conclude that petitioner’s patrons were entitled by reason of its bylaws to that part of the so-called patronage dividends distributed to them which was in excess of 8 percent of the par value of petitioner’s common stock outstanding and to that extent these patronage dividends were properly excluded from the taxable income of petitioner. However, that part of these patronage dividends which could have been distributed in the discretion of petitioner’s board of directors as dividends upon petitioner’s common stock must be considered as the property of petitioner and taxable to it as its income. The fact that member patrons were under obligations with regard to the purchase of petitioner’s stock under certain circumstances and that petitioner had a right to apply a part of the “patronage dividends” to a satisfaction of such obligations, is immaterial. It does not affect the right of the member patrons to receive “patronage dividends,” but merely constitutes a permanent directive as to their application. The result of the procedure set up by petitioner’s bylaws was as if the stockholder member who was under obligation to purchase additionel stock had received, in cash, the “patronage dividend” and had thereupon applied this sum to the payment of his stock. The stock, when thus paid and issued to him, was not in the nature of a stock dividend, but represented an additional investment on his part to the capital of the corporation out of his savings from the annual transactions with petitioner. Respondent contends that the charter and bylaws of petitioner can not be considered as a contract with its stockholders and those doing business with it, citing Helvering v. Northwest Steel Rolling Mills, 311 U. S. 46, and Grane-Johnson Co. v. Helvering, 311 U. S. 54. These cases are not relevant to the issue before us, which is not whether there is a contract executed in writing by the petitioner, but is whether there was the right on the part of petitioner’s patrons throughout the taxable years to “patronage dividends” which existed independent of the resolutions of the board of directors declaring them. Respondent also relies upon Cooperative Oil Association, Inc. v. Commissioner, 115 Fed. (2d) 666, and Juneau Dairies, Inc., 44 B. T. A. 759. The first case is distinguishable on its facts for the reasons given in Midland Cooperative 'Wholesale, supra, at page 834. The second case is distinguishable in that distributions were made there only to stockholders, and nonshareholders being denied the advantage of any distribution. Reviewed by the Court. Decision will be entered under Rule 50.