**ASSOCIATED GROCERS OF ALABAMA, Inc. v. WILLINGHAM.**

Civ. No. 5914.

District Court, N. D. Alabama, S. D.

April 14, 1948.

G. R. Harsh, of Birmingham, Ala., for plaintiff.

John D. Hill, U. S. Atty. and William H. Burton, Jr., Asst. U. S. Atty., both of Birmingham, Ala., for defendant.

LYNNE, District Judge.

This suit was filed by the plaintiff to recover certain income and excess profit taxes paid by the plaintiff corporation under protest for the tax years 1941 and 1942, upon deficiency assessments made by the defendant. The taxes sought to be recovered are as follows: For the tax year 1941—income and declared value excess profits tax and interest in the amount of $1,607.48; and for the tax year 1942—income and declared value excess profits tax and interest in the amount of $982.41 and excess profits tax of $7,622.58.

The controversy grows out of the disallowance of deductions claimed by the plaintiff corporation on its income and excess profits tax for the years referred to for so-called "patronage dividends" or refunds of profits paid by the company to its membership certificate holders, in proportion to their trading operations with the company and without regard to the amount of stock held by the distributees of such

refunds. Plaintiff corporation has met the requirements of all laws and formalities to enable it to recover the payments involved if it is legally entitled to do so. The sole question for the decision of the court is whether or not the "patronage dividend" deductions should have been disallowed by the Commissioner as deductions upon income and excess profits tax returns for the two years here in question. Except for the amounts involved, the same facts and circumstances apply substantially to the taxes for both years, with the exception that the corporation's by-laws were amended on April 8, 1941, and its articles of incorporation were amended on April 15, 1941, both as set out in the stipulation of facts. The by-laws and articles of incorporation as amended remained unchanged throughout the year 1942.

The plaintiff does not claim that it is exempt from taxation, but contends that the amounts distributed to stockholder patrons and member patrons are not properly includable in its taxable income, because of the nature of its organization and the operation of its business, in that the refunds distributed were allowable as proper business expenses.

■ For the plaintiff to recover, it must be established that there was an obligation by the corporation to make refunds or rebates to member patrons when the incomes for the respective years were received by the corporation. Peoples Gin Co., Inc. v. Commissioner of Internal Revenue, 5 Cir., 118 F.2d 72.

Such an obligation must arise from the association's articles of incorporation, its by-laws, or some other contract, and must not depend upon some corporate action taken after its receipt of the money later distributed, such as the action of the corporation's officers or directors.[1]

The facts, as stipulated by the parties and found by the court, are set out in the margin.[2]

---

[1] American Box Shook Export Ass'n v. Commissioner of Internal Revenue, 9 Cir., 156 F.2d 629; United Cooperatives Inc., Petitioner, v. Commissioner of Internal Revenue, Respondent, 4 T.C. 93; Fruit Growers Supply Co. v. Commissioner of Internal Revenue, 9 Cir., 56 F. 2d 90.

[2] By this stipulation the parties, acting by their respective attorneys, agree that the following facts are true. The right is reserved by either party to introduce further evidence not inconsistent with the facts herein stipulated as true and either party may object to any facts stipulated as being immaterial or not relevant to the issues.

I. Associated Grocers of Alabama, Inc., is a domestic corporation chartered, organized and existing under the general corporation laws of Alabama, having the general powers usually granted to such corporations engaged in the wholesale grocery business. The corporate existence began on or about March 22, 1928. Each of the original incorporators was an independent retail grocer.

The principal purpose in forming the corporation was to combine the buying power of the retail grocer members and stockholders and thus enable the corporation to purchase in large quantities, obtain discounts, effect savings in transportation charges, distribution, etc., which, in turn, would enable the members and stockholders to compete with chain stores operating in Birmingham and its vicinity. The business was thereafter conducted from centrally located office and warehouse. Groceries and supplies were bought and sales were made by the corporation to both stockholders, members and outsiders.

II. During 1941 and 1942, the taxable calendar years involved here, the amounts and percentages of sales to membership certificate stockholders and to outsiders were as follows:

| | For the year 1941 | Percent of total | Amount |
|---|---|---|---|
| Sales to stockholders | | 50.7412% | $190,597.04 |
| Sales to outsiders | | 49.2588% | 185,028.47 |
| | | 100.0000% | $375,625.51 |
| Total sales | For the year 1942 | | |
| Sales to stockholders | | 52.9198% | $210,078.14 |
| Sales to outsiders | | 47.0802% | 186,896.68 |
| Total sales | | 100.0000% | $396,974.82 |

Exhibit C to the stipulation of facts, consisting of the report of the Revenue Agent, upon which the disallowance is based, is not included because it was not considered by the court to be of any probative value.

Consideration is first given as to whether there was an obligation arising under the by-laws or charter of the corporation. The amendment of the corporation's by-laws on April 8, 1941, was mandatory in its requirement to credit to the outstanding certificates of membership, based upon the trade operations of the corporation with the owner and holder of the certificate, any profits after deducting therefrom any amount necessary for improvements, expansions or operating capital. The amendment to the corporation's certificate of incorporation on April 15, 1941, was not mandatory in its provisions but, to the contrary, left it within the discretion of the Board of Directors to return to the

owners and holders of certificates of membership any profits earned by the corporation during the preceding fiscal year, such refunds being evidenced by patronage dividend certificates or preferred stock, in the discretion of the certificate holder, or in cash in the sole discretion of the Board of Directors. The returns of such profits thereby authorized were to be based upon the trading operations for that year.

The amendment of the by-laws on April 8, 1941, was valid under the powers to enact such by-laws as prescribed in sub-section 5 of Section 7015 of the Code of Alabama of 1928, carried forward in Title 10, Section 70 of the Code of Alabama of 1940. The amendment to the articles of incorporation on April 15, 1941, was valid under sub-section 10 of Section 6965 of the Code of Alabama of 1928, carried forward as Title 10, Section 2 of the Code of Alabama of 1940. The question becomes,

---

III. On April 8, 1941, at a duly called and constituted meeting of the stockholders, the company's by-laws were legally and properly amended by an enactment of revised by-laws. Article 14 of the revised by-laws as adopted April 8, 1941, provided as follows: "The Board of Directors are authorized and empowered at the end of each fiscal year to determine profits or losses during such year. Any profits, after deducting therefrom any amount necessary for repairs, improvements, expansions or operating capital, must be credited to the outstanding certificate of membership, based upon the trade operations with the corporation of the owner and holder of the certificate."

Thereafter on April 15, 1941, at a duly and regularly constituted meeting of the stockholders a resolution was adopted approving an amendment to the original Certificate of Incorporation, which said amendment was duly recorded in the Probate Judge's Office of Jefferson County, Alabama, in Volume, to wit, 58, Page 30, Incorporation Records. The amended certificate of incorporation effective as of April 15, 1941, provided in part as follows: "The corporation shall also have the right in the discretion of the Board of Directors to return to the owners and holders of certificates of membership any profits earned by the corporation during the preceding fiscal year, such refunds

being evidenced by patronage dividend certificates or preferred stock, in the discretion of the certificate holder, or in cash in the sole discretion of the Board of Directors. The corporation shall have the power in the discretion of the Board of Directors to levy an assessment against the outstanding patronage dividends, preferred stock, common stock of certificates of membership in the order named, such refunds of profits and assessments above authorized to be based upon the trading operations during the next preceding fiscal year of the owner and holder of the patronage dividend, preferred stock, or certificates of membership and in the proportion which such trading operations bear to the total amount of such profits refunded or total amount of such assessments levied. The corporation shall not pay any dividend except upon preferred stock and except as above provided."

Prior to April 8, 1941, the original by-laws were in effect and Article 3 thereof provided in part with respect to dividends and profits as follows: "The dividends shall be declared out of the earnings only as the Board of Directors may determine."

IV. Both before and after the amendment to the charter as above set forth as of April 15, 1941, and both before and after the date of the amendment of the

therefore, one of decision as to whether the provisions in the amendment to the charter superseded the amendment of the by-laws. It is my opinion that the provisions of the charter are controlling, and that thereunder not only the' time and

by-laws as of April 8, 1941, above referred to all of the stockholders of the company and also many prospective stockholders thereof were notified of the adoption of the by-laws and of the effort of the company to carry out a purpose of distributing patronage dividends, a specimen copy of one of the letters in the circularization referred to being hereto attached, marked "Exhibit A", and referred to and adopted as if fully here set out, and that said certificate holders and stockholders relied on the representations and promises made in said letters and undertakings in said by-laws to distribute patronage dividends in accordance with the said by-laws and were induced thereby to increase their trading operations with the company.

V. A schedule set forth in Exhibit "B" hereto attached and made a part hereof shows the amount of patronage dividends allowed and paid to the holders of Certificates of Membership for 1941 and for 1942, respectively.

Patronage dividend certificates allowed during the years in question were only to those holding membership certificates, such allowance in each instance being in direct proportion to the trading operations of such member certificate holder with the corporation.

The pro rated profits earned by the Company for the year 1941 and distributed to the certificate holders for the periods before and after April 8, 1941, were as follows:

Before April 8, 1941 After April 8, 1941
$2,178.91 $5,936.42

VI. The taxpayer duly filed its corporation income and declared value excess profits tax return for the calendar year 1941 with Collector of Internal Revenue for the District of Alabama, on March 14, 1942. In this return the taxpayer claimed a deduction from its gross income of $8,227.83 for patronage dividends paid during 1941 to the holders of certificates of membership in the corporation.

For the calendar year 1942 the taxpayer filed a like return with the same official on March 15, 1943. In this return the taxpayer claimed a deduction from its gross income of $8,875.26 for patronage dividends paid during 1942 to the holders of certificates of membership in the corporation.

On an audit and review the Commissioner of Internal Revenue disallowed these patronage dividends as deductions in 1941 and 1942 in their entirety. The report of the revenue agent upon which the disallowance is based is attached hereto and made a part hereof marked "Exhibit C". Thus the only question presented to the Court for decision in this action is whether the Commissioner erred in disallowing these deductions. If the deductions were proper and allowable the taxpayer is entitled to recover the amount sued for together with interest from February 18, 1946, instead of February 16, 1946.

VII. The taxpayer paid to the defendant the amounts occasioned by the disallowance of the patronage refund deductions on February 18, 1946, and timely filed claims for the refunds thereof on the same grounds as those set forth in the complaint. This suit was timely brought more than six months after the claims for refund were filed. The Commissioner of Internal Revenue has taken no action on the claims for refund.

Exhibit "A"

Andrews Grocery Co.
4610 E Court So., Central Park
Birmingham, Alabama

Gentlemen:
Attn: Mrs. Andrews and Mr. Copeland

At the last stockholders' meeting several changes were made in the method of operating your warehouse. The most progressive step was the setting up of a plan which enables each stockholder to share in the profits in proportion to his purchases during the year.

All profits are apportioned at the end of each year and at the present time are being paid in preferred stock or patronage dividend certificates, which are a preferred claim against the association as compared to common stock. The result of this change is that you are returned at each year's close all the profit the warehouse had made on your purchases less the cost of operation.

This action makes your membership in the Associated Grocers of Alabama, Inc. one of the most profitable assets in the successful operation of your business if you will take full advantage of this plan by concentrating your purchases—as these benefits accrue only to those who are fully paid in stockholding mem-

manner but also the obligation of returning profits to the holders of membership certificates were reserved to the discretion of the Board of Directors. By-laws are valid only when consistent with the charter and those by-laws which are not consistent

---

bers, patronizing the warehouse for their grocery needs and who pay their pro rate share of advertising cost.

Our committee will call on you within the near future and explain any part of this new set-up that might not be clear to you. In the meantime, why not "cash in" on this new plan by buying everything possible through your warehouse— for—"the more you use this new plan, the more you will profit."

When you are down town come by the warehouse and let us show you what a complete stock of merchandise is at your disposal. When you see the fine warehouse and up-to-the-minute stock we have today, we are certain it will make you appreciate being a member more than ever.

Cordially yours,
R. L. Fair
Secretary-Treasurer
Associated Grocers of Alabama, Inc.

Exhibit "B"
Associated Grocers of Alabama, Inc.
Birmingham, Alabama
Patronage Dividends Allowed and Paid
Calendar Years 1941 and 1942

| Stockholder | Paid In 1941 | Credited In 1941 | Paid In 1942 | Credited In 1942 |
|---|---|---|---|---|
| Belview Grocery | $ 500.00 | $ 451.14 | $ 222.89 | $ 440.17 |
| Brackett & Son | | 3.31 | | 1.61 |
| Blalock Grocery Company | 200.00 | 328.68 | 116.68 | 256.57 |
| Cambron Grocery Company | 100.00 | | | |
| Carmichael & Company | 600.00 | 455.37 | 223.11 | 368.71 |
| Clay, T. L. | 100.00 | 16.37 | | 41.46 |
| Fair, C. P. | 300.00 | 308.41 | 115.64 | 327.57 |
| Fair, R. L. | 400.00 | 340.61 | 117.28 | 357.64 |
| Fassina, J. B. | 200.00 | 187.43 | 9.51 | 241.87 |
| Franklin, H. G. | 500.00 | 389.91 | 119.78 | 356.51 |
| Guilian Brothers | 400.00 | 128.30 | | 33.82 |
| Hull Grocery Company | 100.00 | 100.04 | 5.08 | 104.32 |
| Hyde Park Grocery Company | 500.00 | 386.88 | 119.63 | 392.30 |
| Johns Grocery Company | 600.00 | 401.05 | 120.35 | 555.55 |
| Land Brothers | 800.00 | 416.21 | 121.12 | 480.96 |
| Lemons, J. A. | 300.00 | 250.99 | 112.74 | 254.49 |
| Little, T. H. | 400.00 | 339.10 | 117.21 | 206.25 |
| Malpelli, J. J. | 700.00 | 555.88 | 228.21 | 526.51 |
| Osceola Grocery | 800.00 | 314.60 | 115.96 | 283.05 |
| Plan, Fred | 500.00 | 338.63 | 117.18 | 345.80 |
| Purity Market | 600.00 | 441.35 | 222.39 | 422.68 |
| Reed, Fred W. | 900.00 | 408.41 | 120.72 | 533.08 |
| Smitherman Grocery | 300.00 | 307.38 | 115.59 | 297.75 |
| Waddell, L. E. | 200.00 | 26.53 | | 107.99 |
| Walker & Garvick | 200.00 | 209.16 | 10.61 | 251.73 |
| Ward Merchandise Company | | 85.82 | 4.35 | 114.29 |
| A & R Food Store | | 164.34 | | 76.29 |
| Anderson & Close | | 94.01 | 4.77 | 162.35 |
| Andrews Grocery | | 69.99 | | 30.58 |
| M. D. Kimbrough | | 97.39 | 4.94 | 218.49 |
| Pine Street Grocery | | 27.40 | | 36.50 |
| Riviere Grocery | | 222.70 | 111.30 | 391.76 |
| Whiten, E. N. | | 225.61 | 111.45 | 317.86 |
| Wilson, C. E. | | 82.80 | 4.20 | 338.75 |
| Sewell Grocery Company | | 52.03 | | |
| Totals | $10,200.00 | $8,227.83 | $2,692.69 | $8,875.26 |

with the charter but are in conflict with and repugnant to it are void.[3]

■■ Where the management and control of the corporation is vested by the charter not in the stockholders or members, but in a board of directors, their action in regard to the affairs of the corporation is controlling and exclusive, and the stockholders or members cannot control the directors in the exercise of the judgment vested in them by the charter. Their function is to exercise judgment and discretion which the courts cannot do in their stead.[4]

■ Since there was no enforceable obligation on the part of plaintiff corporation under its charter and valid by-laws to refund profits to its membership certificate holders at the time the income was received, it follows that plaintiff is not entitled to a deduction on the basis of profits eventually refunded.[5]

■ This situation existed for the entire year of 1941, except, possibly, for the period from April 8, 1941, to April 15, 1941. The amount of earnings, if any, for this period does not appear from the evidence and in its absence, the court cannot find that there was any income from which the right to rebates accrued and in the absence of such evidence, under the burden of proof assumed by the plaintiff, it becomes unnecessary for the court to determine whether there was any valid obligation to make refund from the profits realized during this period.

■ This leaves for consideration the question as to whether or not there was any other binding contract, written or oral, between the stockholder members and the corporation. Exhibit A to the stipulation of facts consists of a specimen copy of a letter sent to the company stockholders and prospective stockholders, setting out the corporation's plans to give rebates to its stockholding members on all profits that the corporation had made on purchases less the cost of operation. Under the further facts set down in the stipulation that the "certificate holders and stockholders relied on the representations and promises made in said letters and undertakings in said by-laws to distribute patronage dividends in accordance with the said by-laws and were induced thereby to increase their trading operations with the company," I would be constrained to hold that there was a binding obligation, as between the corporation, and the stockholders of the corporation and those who were induced to become stockholders, thereby to pay such rebates were it not for the amendment to the articles of incorporation effective April 15, 1941. Certainly the stockholders who adopted this resolution were charged with notice of the change in provisions and authority as set forth in the amendment to the articles of incorporation, which amendment was duly recorded, and there would attach to and become incorporated in any such agreement those pertinent provisions of the amendment to the articles of incorporation which left the refund of profits within the discretion of the Board of Directors.

■ Even if the notice of the plan of the corporation to make refund of profits to the stockholders on the basis of the trading operations of each stockholder became in effect a contract as a result of increased trading operations of the stockholders in reliance on such promise, this agreement would necessarily include statutory provisions under which the initial articles of incorporation were granted, which statutory provisions provided for amendment to the charter and the right to include in the charter special provisions for the regulation of the business and the conduct of the affairs of the corporation. Bernstein et al. v. Kaplan, et al., 150 Ala. 222, 43 So. 581.

---

[3] Supreme Commandery of the Knights of the Golden Rule v. Ainsworth, 71 Ala. 436, at page 451, 46 Am.Rep. 332; Steiner & Lobeman v. Steiner Land & Lumber Co., 120 Ala. 128, at pages 139, 140, 26 So. 494; 2 Fletcher Cyclopedia Corporations, Sec. 4190.

[4] 5 Fletcher Cyclopedia Corporations, Sec. 2104 and cases collated under Notes 21 and 22.
[5] American Box Shook Export Ass'n v. Commissioner of Internal Revenue, supra; United Cooperatives Inc., Petitioner, v. Commissioner of Internal Revenue, Respondent, supra.

There was inherent in any contract between the stockholders and the corporation the provisions referred to above, and they were charged with notice that amendment was possible thereunder, and when they, by their own resolution, so amended the articles of incorporation to include provisions inconsistent with the amendment to the by-laws of April 8, 1941, the plaintiff cannot be heard to object that the provisions of the amended articles of incorporation are not controlling or do not supersede the provisions of the by-laws. Clearly, in my mind, there was no obligation to make a refund of profits based on trading operations or patronage dividends, by whatever name they may be called, that would have been enforceable in a court of law had the Board of Directors declined to declare the refund of profits or patronage dividends. Under such circumstances, the corporation was not entitled to deduct the refund of profits either for the year 1941 or 1942. American Box Shook Export Ass'n v. Commissioner of Internal Revenue, supra.

I have given serious consideration to the case of Uniform Printing & Supply Co. v. Commissioner of Internal Revenue, 7 Cir., 88 F.2d 75, 76, 109 A.L.R. 966, cited and relied on by the plaintiff. The pertinent by-law in the Uniform Printing and Supply Company case provided: "The decision of the Board of Directors as to the percentage and/or amount to be returned to each customer shall be conclusive." This provision was made in connection with the first portion of the by-law providing that all of the surplus earnings not, in the opinion of the Board of Directors, required in the conduct and/or expansion of the business of the corporation should be returned to the customers. In that case, however, there was an obligation to make refunds under the by-laws but the amount payable was contingent on the decision of the Board of Directors as to the amount of reserves required in the conduct of the corporation's business. In this case, the very obligation itself to make such refunds depends upon the discretion of the Board of Directors.

In addition to the cases previously cited, I have considered the following cases[6] and find that they are either reconcilable with or distinguishable from the case at bar on the critical point as to whether there was an obligation arising from the corporation's articles of incorporation, its by-laws, or some other contract, to pay patronage dividends by rebate at the time the income concerned was received by the corporation.

The court is satisfied that the plaintiff deliberately set out in the early part of 1941 to avail itself of the "patronage dividend" plan. The following steps on the part of the company to that end are disclosed by the stipulation of facts: (1) A by-law enacted April 8, 1941, requiring the directors to refund at the end of the fiscal year any profits (after certain authorized deductions) upon trade operations with the corporation of the owner or holder of the certificate. (2) The approval on April 15, 1941, of an amended Certificate of Incorporation, giving the Board of Directors discretion to "return" to the owners and holders of certificates of membership any profits earned by the corporation during the preceding fiscal year, such refunds being evidenced by the patronage dividend certificates, or preferred stock in the discretion of the stockholder, or in cash in the sole discretion of the Board of Directors. (3) The circularization by letter of all of the stockholders, both before and after the by-law enactment and charter amendment, setting forth the declared purpose of the company to distribute patronage dividends.

6 Midland Cooperative Wholesale, a cooperative Association v. Comm. of Internal Revenue, 1941, 44 B.T.A. 824; United Cooperatives, Inc., Pet. v. Comm. of Internal Revenue, Resp., 1944, 4 T.C. 93; Valparaiso Grain & Lumber Co. v. Comm., 1941, 44 B.T.A. 125; Home Builders Shipping Ass'n v. Comm. of Internal Revenue, 1927, 8 B.T.A. 903; Appeal of the Trego County Cooperative Ass'n, 1927, 6 B.T.A. 1275; Anamosa Farmers Creamery Co. v. Comm. of Internal Revenue, 1928, 13 B.T.A. 907; Anderson Clayton Securities Corp. v. Commissioner, 35 B.T.A. 795; Cleveland Shopping News Co. v. Routzahn, Collector of Internal Revenue, 6 Cir., 89 F. 2d 902; Green County Farmers Sales Ass'n v. United States, 55 F.Supp. 123, 102 Ct.Cl. 105.

(4) The consummation of the distribution of the patronage dividends by actually crediting the same to the account of the member certificate holders at the end of the year.

 But for the ineptitude of the draftsman of the amended certificate of incorporation (who was not plaintiff's distinguished counsel), the plan would have achieved its objective. However, it is not the function of the courts to compensate for such mistakes or to declare that what was done, though through ignorance, was a substantial injustice. The language of Judge Hutcheson in Jeffries v. Commissioner of Internal Revenue, 5 Cir., 158 F.2d 225,[7] 226, is peculiarly appropriate to the situation obtaining here.

An appropriate judgment will be entered in favor of the defendant dismissing plaintiff's action with prejudice.

---

[7] "Whether a transaction or result is taxable and what the tax is is not a matter to be determined in law upon considerations of general justice or equity. It is a matter of statutes and valid regulations, and what they mean. Neither is it to be determined in fact upon considerations of what was intended to be done. Rather it is to be determined by what was done. Because the statutes and regulations read as they do and the facts are what they are, it will not avail petitioner to point (1) to the fact that she all along intended to bring about a complete liquidation, and that she regarded the course taken as bringing this about; and (2) to the tax hardships she is being subjected to for a mere mistake in method if the method adopted is found to be a mistaken one."