*Decisions will be entered under Rule 50.*

DR. P. PHILLIPS COOPERATIVE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26736, 30849. Promulgated December 14, 1951.

*George E. H. Goodner, Esq.*, and *Dewey R. Roark, Jr., Esq.*, for the petitioner.

*Newman A. Townsend, Jr., Esq.*, for the respondent.

1006

OPINION.

Murdock, *Judge:* The petitioner claims that it is exempt from tax for 1946 and 1949 under the provisions of section 101 (12). That section provides that farmers, fruit growers, or like associations organized and operated on a cooperative basis for the purpose of marketing the products of members or other producers, and turning back to them, on the basis of the quantity or value of the products furnished by them, the proceeds of sales, less the necessary marketing expenses, or for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses, shall be exempt; exemption shall not be denied because such an association accumulates and maintains a reasonable reserve for any necessary purpose; and the products of nonmembers can be marketed but not to the extent that their value exceeds the value of the products marketed for members, and supplies and equipment may be purchased for nonmembers provided the value of purchases for nonmembers and nonproducers does not exceed 15 per centum of the value of all purchases. The Commissioner, in determining the deficiencies, gave no explanation for holding the petitioner liable for the tax instead of holding that it was exempt under section 101 (12). The petitioner, under such circumstances, has the full burden of proving that it is exempt.

Each of the nine members of the petitioner during each of the taxable years marketed, through the petitioner, some fruit grown in the grove or groves of that member. Furthermore, patronage dividends were received by each of the members as a result of that marketing in each year. The petitioner was organized and operated to that extent on a cooperative basis for the purpose of marketing the products of members and turning back to them the proceeds of sales, less the necessary marketing expenses on the basis of the quantity or value of the products furnished by them. However, the activities of the petitioner did not end there. Three of the members in 1946 and two in 1949 marketed through the petitioner and received patronage dividends on fruit grown in the groves of nonmembers and purchased by the members. The petitioner makes no argument that one who merely purchased a ripe crop at harvest and marketed it through the petitioner would be a farmer, a fruit grower, or a producer within the meaning of section 101 (12). The provision does not exempt an association of such persons. The petitioner contends, in respect to the purchases by members, that the members were fruit growers and producers of the fruit and were not mere purchasers of fruit grown and produced by others. Its reasoning is that most of those purchases were bulk purchases in which the member agreed to pay a fixed price for an existing crop on the trees without regard to the quantity of fruit

actually picked and packed at harvest; the member either cultivated the crop from that date to harvest or employed the owner of the grove to do that cultivating, and in some or all instances the caretaking facilities of the petitioner were availed of; the members purchasing fruit assumed the risks of a grower or producer from the date of purchase of the crop to the date of harvest; and in a real sense the member was a grower and producer of that crop.

That contention is supported by evidence that in some instances a substantial period of time elapsed between the date of the contract of purchase and the date when picking began so that the member might have taken some of the risks and responsibilities of a grower. But, the evidence shows affirmatively that the date of one of the 1946 contracts of purchase relied upon was the day on which the fruit was picked. The member was obviously not a grower or producer of that particular crop. It amounted to only 79 boxes of fruit but the member received patronage dividends on the marketing of that fruit. Another contract in that year on which 13,064 boxes of fruit were marketed and on which patronage dividends were received was dated May 13, 1946, and the picking began and ended at dates, not shown by the record, within that same month. That might have been a purchase of ripe fruit in respect to which the purchaser was not a grower or producer. The record shows the date of all of the other contracts for 1946 and the date upon which picking began and ended, but it is impossible to tell to what extent, if any, in some of those contracts the purchaser might fairly be regarded as having taken the risks and responsibilities of the owner of a growing crop. The evidence in regard to 1949 is less favorable to the petitioner. There it shows affirmatively that the purchases of about 9,000 boxes were made after the fruit had been picked. Contracts for the purchase of about 2,000 boxes were dated on the same day on which picking ended. Contracts for over 10,000 boxes were dated from one to nine days before picking ended. Some of the contracts in 1949 were contracts in which the purchaser agreed to pay a stated amount for boxes of merchantable fruit at harvest time. The purchaser under those contracts did not take any of the risks inherent in a growing crop but only took the risk of market conditions at the time of harvest. There is no evidence as to the contract dates and picking dates for 61,935 boxes purchased by Dr. P. Phillips Company in 1949. The evidence fails to show in regard to some of the other contracts the extent to which the purchasers might fairly be regarded as growers.

Thus, the record shows that the marketing activities of the petitioner were not limited to marketing for growers in either year and, to that extent, the petitioner does not come within the exempting provisions of section 101 (12). Furthermore, its operation during

each year included another important activity which section 101 (12) does not purport to exempt, that of maintaining or taking care of groves. That activity can not qualify as "purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses." Congress did not provide exemption in section 101 (12) for a corporation marketing the products of mere purchasers and taking care of groves. The question of whether the reserves were in violation of the section and other questions argued by the respondent need not be decided.

Although the Commissioner has held that the petitioner is not exempt under section 101 (12), nevertheless he has allowed the petitioner as a cooperative to exclude from income for tax purposes the amounts which it has distributed in cash as patronage dividends. There is no express statutory authority for this action but for many years the practice has been followed by the Treasury Department and it has received judicial sanction. The theory is that the cooperative is merely a conduit for the patronage dividends which are in effect an additional cost of goods sold by a marketing cooperative or a rebate by a cooperative which purchases goods or performs services for its members. This exclusion has been applied to amounts retained as reserves by the cooperative where, pursuant to a pre-existing obligation or liability, revolving fund certificates are issued for the amounts retained. *United Cooperatives, Inc.*, 4 T. C. 93, and *Colony Farms Cooperative Dairy, Inc.*, 17 T. C. 688. The petitioner contends that the amounts which it retained for its reserves are to be excluded from income because it was obligated to issue revolving fund certificates for those amounts.

The petitioner had a right under the laws of Florida, its charter, and its amended by-laws to retain amounts from its marketing activities without issuing any revolving fund certificates or other evidence of interest of the members therein. The original by-laws had required that revolving fund certificates be issued but they were amended to eliminate that requirement at some time not shown by the record, but possibly and therefore, presumably under the burden of proof, before these two taxable years began. The contracts in regard to marketing contain no provision requiring the issuance of revolving fund certificates for funds retained. Therefore, the petitioner has failed to establish a factual situation which would bring this case within the cited cases and the principle of law established therein in so far as funds retained from the marketing operations are concerned. Since the patrons had no right to those retained amounts and have not received them, they could not be regarded as having contributed them to the petitioner. The situation in regard to care-

taking activities is different to this extent, that the caretaking contracts contained a provision requiring the issuance of revolving fund certificates for any excessive receipts over expenses retained by the petitioner. It retained the net proceeds from caretaking for 1946 in the amount of $75,718.24 and it retained $6,680.86 from the same source in 1949. It issued revolving fund certificates for those amounts and they may be excluded from income under the two cases cited above.

*Decisions will be entered under Rule 50.*