0187

FCX, INC., Appellant, v. SOUTH CAROLINA TAX COMMISSION, Respondent.

(322 S. E. (2d) 208)

Court of Appeals

*Clinch Heyward Belser*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Asst. Attys. Gen. Jackson E. Fields, Jr.,* and *Ray N. Stevens for respondent.*

Heard Jan. 24, 1984.

Decided May 29, 1984.

BELL, Judge:

This is an action by FCX, Inc., a farmers' cooperative, for a refund of income taxes paid under protest.[1] FCX seeks to exclude from its taxable income the amount of patronage refunds issued to its members in the form of certificates of equity. The circuit court held the refunds were not excludable and denied relief. We affirm.

FCX is organized and incorporated as a non-profit association under the Cooperative Marketing Act of North Carolina, N. C. Gen. Stat. § 54-129 *et seq.* (1975). It purchases or manufactures farm supplies and equipment for resale to its members and nonmember patrons. It also markets agricultural commodities for its member producers. Approximately seventy percent of its business is done with members and thirty percent with nonmembers.

FCX is organized for the benefit of its members. Its bylaws restrict ownership of its common stock to members, each of whom must purchase one share. There is only one class of common stock. The corporation is also authorized to issue five classes of preferred stock. Preferred stock may be owned by any person. Under North Carolina law, a cooperative with capital stock may pay dividends on the stock. These dividends may be paid out of earned surplus or net profits or, if necessary, out of capital surplus. *See* N.C. Gen. Stat. §§ 54-142, 55-50(a) (1975). The bylaws of FCX provide that stock divi-

---

[1] Although the original action involved other claims by FCX, they were abandoned on appeal.

dends are to be paid first to the owners of preferred stock, in order of preference , and then to the owners of common stock.

Under its bylaws, FCX must treat earnings on nonmember business separately from earnings on member business. Nonmember earnings are retained by FCX in an unallocated reserve. FCX pays income taxes, at the regular corporate rate, on these nonmember earnings. Member earnings are separately accounted for and returned to members, in proportion to their patronage, as patronage refunds after each fiscal year. The bylaws give FCX the choice of paying patronage refunds in any form that constitutes notice of the amount allocated to each member patron. FCX has adopted a policy of paying patronage refunds partly in cash and partly in certificates of equity. A certificate of equity represents additional ownership in FCX. It does not bear interest or pay dividends and has no fixed maturity date. That portion of net earnings from member patronage represented by certificates of equity is retained in a capital account by FCX for its use. A declaration of policy approved by the board of directors states FCX will redeem certificates of equity for cash ten years after they are issued or upon a member patron's death.

In the tax years 1973, 1974, and 1975, FCX sought to exclude from its gross income the amount of refunds paid to its member patrons as certificates of equity. The Tax Commission challenged these exclusions, although it has not challenged the exclusions taken by FCX for refunds paid in cash. FCX paid the taxes under protest and sought a refund. The circuit court upheld the Commission, holding that FCX was not under a sufficient obligation to redeem the certificates of equity to qualify for an exclusion. We conclude the judgment was correct, albeit for a different reason than the circuit court gave.

South Carolina and federal taxation of cooperatives is now governed by Subchapter T of the Internal Revenue Code. *See* § 12-7-301, Code of Laws of South Carolina, 1976, as amended; 26 U.S.C. § 1381 et seq. (1962). However, the General Assembly adopted the Subchapter T scheme after the tax years in

question here.[2] In the absence of controlling South Carolina authority before enactment of the statute, FCX relies on federal decisions prior to the time Congress adopted Subchapter T to support its position.[3]

Prior to the enactment of Subchapter T, a farmers' cooperative that was not exempt from income taxation could, upon meeting certain requirements, exclude from its gross income the amount of patronage refunds paid to its members. A patronage refund would qualify for exclusion if it met three tests: (1) the cooperative had to be under a pre-existing legal obligation to pay the patronage refund to its members; (2) the refund had to be paid out of profits or income from transactions with the particular patrons receiving the refund; and (3) the refund had to be paid ratably in proportion to the busines done by each patron receiving a refund. *United States v. Mississippi Chemical Co.*, 326 F. (2d) 569 (5th Cir. 1964). The pre-existing legal obligation could arise from the statutes governing the cooperative, the articles of incorporation or bylaws of the cooperative, or a binding agreement between the cooperative and its members. *Associated Grocers of Alabama, Inc., v. Willingham*, 77 F. Supp. 990 (N. D. Ala. 1948). On the other hand, if the earnings later distributed were received by the corporation without a legal obligation, existing at the time of receipts, to refund them to patrons, they were considered as gross income of the corporation subject to taxation. *United Cooperatives, Inc. v. Commissioner of Internal Revenue*, 4 T. C. 93 (1944). A convenient test of excludability was stated to be whether the right of the patron to the refund of earnings depends upon some corporate action taken subsequent to its receipt of the money refunded, such as action of the corporation's offices or directors. *Id.* The legally enforceable obligation to pay patronage refunds was destroyed to the extent the corporation had discretion to divert net earnings to other purposes. *United States v. Mississippi Chemical Co., supra.*

---

[2] The South Carolina Code section became effective on March 6, 1978. Act No. 424, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Session, 1978.

[3] Subchapter T is effective under federal law, for tax years beginning after December 31, 1962. *Petaluma Co-operative Creamery v. Commissioner of Internal Revenue*, 52 T. C. 457, 465 n. 3 (1969).

Although there was no express statutory provision for this exclusion, it was permitted by the Treasury Department and sanctioned by the federal courts. *Dr. P. Phillips Cooperative v. Commissioner of Internal Revenue,* 17 T. C. 1002, 1010 (1951). The exclusion was based on the theory that the cooperative was merely a conduit for the members. Members were thus entitled to receive rebate or refunds from the cooperative for over charges, and the cooperative was entitled to exclude these amounts from its taxable income. *Id.* This principle is similar to one expressly recognized in this State. Our law does not treat profits as income of a taxpayer if they lawfully belong to another. *Southern Weaving Co. v. Query,* 206 S. C. 307, 34 S. E. (2d) 51 (1945).

The controversy in this case centers around the first requirement for excludability: the requirement that patronage refunds must be paid pursuant to a pre-existing legal obligation. FCX argues that its bylaws provide the requisite pre-existing legal obligation.

Article VI, section 3 of the bylaws states, in part:

> The Corporation is hereby obligated to pay as patronage refunds to its patron members its net earnings for each fiscal year to the extent of its net earnings attributable to its member patronage during such period *less any dividends paid on its capital stock from member patronage,* in the event that payment of dividends on capital stock exceeds the unallocated reserve ... [Emphasis added.]

FCX contends this bylaw imposes upon it a binding obligation to pay as patronage refunds to its members its net earnings on member patronage for each fiscal year. We read the provision differently.

The underscored language permits FCX to use earnings from member patronage to pay dividends on this capital stock, not all of which must be owned by members. Since the board of directors has this discretion to use earnings from member patronage to pay stock dividends instead of patronage refunds, the corporation is not under a pre-existing legal obligation to refund all net earnings from member patronage to its members. Rather than being a conduit to return earnings from member patronage to its members, FCX can become a siphon, diverting those earnings to nonmember owners of capital stock. For this reason, FCX does not meet

the first requirements for exclusion of earnings from its taxable income. FCX is not under a pre-existing obligation to refund net earnings from patronage if it may, in its discretion, use those earnings for another purpose.

This precise point was decided in *United Cooperation, Inc. v. Commissioner of Internal Revenue, supra.* In that case the bylaws permitted the directors to pay dividends from the net earnings of the cooperative of up to eight percent on capital stock. Patrons of the corporation were entitled to all the net income of the corporation remaining after stock dividends were declared. Thus, the amounts to be distributed to patrons as refunds could not be ascertained until the directors had acted or refrained from acting with regard to stock dividends. The court held that because the corporation had a choice of using the money to declare stock dividends, it could not be said that all money eventually distributed to patrons was received by the corporation with a legal obligation existing at the time of its receipt to distribute it as patronage refunds. To the extent no legal obligation existed, the money was not excludable from the taxable income of the corporation. The same rule was approved by the United States Court of Appeals for the Fifth Circuit in *United States v. Mississippi Chemical Co., supra,* at 571.

FCX relies on a line of cases holding that non-cash patronage refunds are excludable from the taxable income of a cooperative. *See Farmers Cooperative Co. v. Commissioner of Internal Revenue,* 288 F. (2d) 315 (8th Cir. 1961); *Southwest Hardware Co. v. Commissioner of Internal Revenue,* 24 T. C. 75 (1955); *Colony Farms Cooperative Dairy, Inc. v. Commissioner of Internal Revenue,* 17 T. C. 688 (1951); *Farmers Cooperative Co. v. Birmingham,* 86 F. Supp. 201 (N. D. Iowa 1949). Our decision is entirely consistent with the law in those cases. They are, however, distinguishable on their facts. In each, the cooperative was under a binding obligation to pay patronage refunds with no discretion to divert patronage earnings to other uses. The only discretion retained by the cooperative was to form and time of payment. In contrast, FCX has discretion not to refund earnings from members patronage, but to pay them as stock dividends. To the extent it can elect to

use such earnings to pay stock dividends, no binding obligation to member patrons exists under its bylaws.

Affirmed.

SHAW and CURETON, JJ., concur.