**FARMERS COOPERATIVE COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16507.

United States Court of Appeals Eighth Circuit.

March 3, 1961.

Robert C. Guenzel, Lincoln, Neb., for petitioner.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C., for respondent. Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., were with him on the brief.

Before WOODBROUGH, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This case is before us upon timely petition by taxpayer, a nonexempt cooperative corporation, for review of decision of the Tax Court (opinion 33 T.C. 266) assessing deficiencies against it for income taxes for the calendar years 1953 and 1954, based upon the disallowance of an exclusion from income of alleged patronage dividends. The Tax Court sus-

tained the Commissioner's disallowance of the patronage dividends on the basis that the taxpayer had lost its right to exclude or deduct the amount claimed on its returns as patronage dividends for the years 1953 and 1954 because it had failed to make proper and timely allocation of such earnings. More specifically, the Tax Court denied the exclusion because the Cooperative did not give actual notice to its patrons of the dollar amount of the patron's share of the dividends before the time when a tax return was due for the taxable years, such notice not having been given until more than a year after the expiration of each of the taxable years in question.

Taxpayer contends that the notification to patrons of the specific amount of the dividend due each is not a condition precedent to its right to exclude patronage dividends for the taxable years. This issue is described by the parties as the narrow issue, and we shall so refer to it.

The Commissioner, in his reply brief in this case and in a similar brief in Pomeroy Cooperative Grain Co. v. Commissioner, 288 F.2d 326, submitted on the same day as the instant case, urged that the decision of the Tax Court should be sustained upon the basis that the earnings of the Cooperative must be taxed to someone as income; that sufficient action has not been taken by the Cooperative to make the patronage dividend taxable to the patron as income, and hence the patronage dividend is not excludable from income by the corporation and remains taxable to it as income—that is to say, the Cooperative can exclude patronage dividends from its income only to the extent they are paid out in cash or its equivalent so as to be taxable to the patron. Like the parties, we will refer to this issue as the broad issue.

The facts bearing upon both issues are largely stipulated. The material facts are not in dispute. It is conceded that taxpayer is a nonexempt farmers cooperative corporation organized under the laws of Nebraska. Taxpayer operates on a calendar year basis and keeps its records and makes its income tax returns upon an accrual basis. Taxpayer claimed an exclusion from gross income for patronage dividends amounting to $2,415 in 1953 and $10,470 in 1954. The Tax Court, in its findings, states:

"The petitioner's only function was to market grain for its members. The patronage refunds excluded by petitioner for 1953 and 1954 were charged against income realized from transactions with the particular patrons who were entitled to receive the refunds, not out of income realized from transactions with nonpatrons. The patronage refunds, when allocated, were made ratably to the individual patrons in proportion to the amount of grain sold by each of them to the petitioner, and were made pursuant to an existing obligation on the cooperative to make certain refunds of earnings.

"The stockholders of petitioner who were present at its annual meeting held on March 12, 1954, were notified of the total patronage dividend in the amount of $2,415.35 for 1953. However, the individual patrons of petitioner were not notified of the dollar amounts of their separate patronage refunds for 1953 until February 10, 1955.

"The stockholders of petitioner attending its annual meeting on February 28, 1955, were notified of the total patronage dividend in the amount of $10,470.72 payable for the year 1954. The individual patrons were not notified of the amounts of their patronage refunds for 1954 until October 10, 1956."

The record is not clear as to the precise terms of the corporate action in declaring or allocating the dividend. It appears from the pleadings and briefs that the dividends for the years in question were set aside on the books of the corporation to the credit of the patrons and retained by the corporation in a revolving fund for capital uses. Under the terms of a loan which the taxpayer had made from the Omaha Bank for

Cooperatives, it was agreed that no patronage dividends or other distribution of capital be paid out while the loan remained outstanding.

We shall first consider the broad issue. It is quite true, as stated by the Tax Court, that there is no express statutory provision either in the 1954 Code or any prior revenue code authorizing a nonexempt cooperative, such as the taxpayer, to exclude or deduct from its gross income patronage dividends or rebates it has made to its patrons. Statutory authorization for such exclusion if it exists must be gleaned from the revenue statutes as a whole, particularly from those defining gross income. The Tax Court states:

"Neither the 1939 Code nor the 1954 Code expressly provides for the exclusion from gross income of patronage dividends, refunds, or rebates by a taxable cooperative association. However, it has been the long-established administrative policy of the Commissioner to permit the exclusion of true patronage dividends by nonexempt cooperatives under certain conditions. I.T. 1499, I–2 C.B. 189, 191 (1922); A.R.R. 6967, III–1 C.B. 289 (1924); S.M. 2595, III–2 C.B. 238 (1924); G.C.M. 12393, XII–2 C.B. 398 (1933); G. C.M. 17895, 1937–1 C.B. 56; I.T. 3208, 1938–2 C.B. 127; Rev.Rul. 57–59, 1957–1 C.B. 24.

"The respondent's practice in permitting the exclusion of patronage dividends by taxable cooperatives is recognized both in section 101(12) (B) of the 1939 Code [26 U.S.C.A. § 101(12) (B)] and in section 522 (b) (2) of the 1954 Code [26 U. S.C.A. § 522(b) (2)], which provide that patronage dividends, refunds, and rebates to patrons with respect to their patronage shall be taken into account in computing net taxable income (of an *exempt* cooperative) in the same manner as in the case of a cooperative organization not exempt.

"The basis for the Commissioner's policy in allowing the exclusion of patronage dividends by nonexempt cooperatives is that such dividends in reality represent either rebates to patrons of a part of the price initially paid by them on purchases made through a cooperative purchasing organization, or an additional cost paid by a cooperative marketing organization to its patron for products sold to it. The propriety of the respondent's practice in permitting such exclusions by nonexempt cooperative associations has been recognized and sustained by this and other courts. Midland Cooperative Wholesale, 44 B.T.A. 824; Fruit Growers Supply Co., 21 B.T.A. 315, affirmed 9 Cir., 56 F.2d 90; United Cooperatives, Inc., 4 T.C. 93; Clover Farm Stores Corporation, 17 T.C. 1265; Farmers Cooperative Co. v. Birmingham, 86 F.Supp. 201 ([D.C.] N.D.Iowa).

"The foregoing decisions indicate that an allocation of earnings by a cooperative to its patrons cannot qualify as a true patronage dividend unless (1) the allocation was made pursuant to a legal obligation which existed at the time the participating patrons transacted their business with the cooperative, (2) the allocation was made out of profits or income realized from transactions with the particular patrons for whose benefit the allocation was made, and (3) the allocation of earnings was made ratably to the particular patrons whose patronage created the income from which the allocated refund was made. Pomeroy Cooperative Grain Co., 31 T.C. 674; Clover Farm Stores Corporation, supra; Farmers Cooperative Co. v. Birmingham, supra."

Judge Graven, in Farmers Cooperative Co. v. Birmingham, D.C., 86 F.Supp. 201, one of the authorities cited and relied upon by the Tax Court, makes a detailed review of the history and function of farmers cooperatives and the tax

treatment accorded them. Pertinent portions of numerous treasury rulings and other administrative rulings on the excludability of patronage dividends by nonexempt cooperatives are collected and set out at pages 219 to 223 of 86 F.Supp. The opinion also cites and discusses numerous decisions of the Tax Court and other courts.

The dividend held excludable in the Birmingham case appears to be quite similar to that here involved. The dividend there involved apparently was a book credit dividend allocated to a revolving fund and credited to members in proportion to the business transacted by them. It was considered as a contribution by the patrons to capital and was not subject to withdrawal at the will of the patron. After a thorough consideration of the available authorities, including revenue rulings, cases, law review articles and treatises, Judge Graven concluded that the patronage dividend which the cooperative was under a prior obligation to pay to the patron, upon the basis of the business transacted with it by the patron, was excludable from the cooperative's gross income for tax purposes, despite the fact that the dividend was left in a revolving fund and not subject to immediate withdrawal by the patron. Judge Graven, at page 228, states:

"[I]t would seem that Treasury Department rulings excluding patronage dividends for federal income tax purposes must be based, as they apparently are, upon the theory that under certain conditions a part or all of the earnings of a cooperative are in economic reality not the income of the cooperative but the income of its patrons."

The revenue rulings issued subsequent to the decision of the Birmingham case in 1949 appear to be consistent with and of the same general character as those cited and relied upon in the Birmingham case.

Revenue Ruling 54-10, C.B. 1954-1, p. 24, at pp. 25-26:

"A cooperative association may exclude from its gross income true patronage dividends when made pursuant to a prior agreement between the cooperative organization and its patrons. The justification for this treatment rests upon the fact that these patronage dividends represent either an additional consideration due the patron for goods sold through the association or a reduction in the purchase price of supplies or equipment purchased by the patron. The amounts which may be excluded as patronage dividends are not limited to the distributions made in cash but include amounts distributable but retained by the cooperative and distributed in forms other than cash.

\* \* \* \* \* \*

"The theory under which a cooperative association may make an allocation in document form is that the patron by express contract or by doing business with the cooperative agrees to allow the association to retain funds to which the patron is entitled."

Revenue Ruling 57-59 (1957-1 C.B. 24) provides in part:

"Patronage dividends distributed by a farmers' nonexempt cooperative on account of crops purchased from its members are excludable from its gross income to the extent they are distributed, on a true patronage basis in accordance with a pre-existing agreement, to members who owned the crops when they were acquired by the cooperative, even though such members did not produce the crops.

\* \* \* \* \* \*

"If patronage dividends which meet the foregoing requirements are not paid in cash or merchandise, but each distributee-patron is notified of the amount allocated to him pursuant to a pre-existing obligation, the principles stated in Revenue Ruling 54-10, C.B. 1954-1, 24, with respect to amounts that may be excluded by an exempt cooperative and the tax treatment thereof as

to its patrons, are also applicable to a nonexempt cooperative and its patrons. Compare Colony Farms Cooperative Dairy, Inc. v. Commissioner, 17 T.C. 688, acquiescence, C.B. 1952–1, 1, and Southwest Hardware Co. v. Commissioner, 24 T.C. No. 12, acquiescence, C.B. 1955–2, 9."

The Tax Court, in its opinion in this case and in Pomeroy Cooperative Grain Co., 31 T.C. 674, has continued to recognize the right of nonexempt cooperatives to exclude a patronage dividend of the type here involved.

Taxpayer contends that the rulings giving special treatment to patronage dividends remain in full effect and that nothing has been done to withdraw, alter or change such rulings. The rulings relied upon were in full force and effect at the time the tax liability here involved arose and so far as we are able to ascertain such rulings never have been withdrawn.

The Commissioner in effect concedes that under his rulings and court decisions heretofore discussed, the patronage dividends credited to a patron pursuant to a pre-existing obligation so to do, were excludable from the cooperative's gross income, whether the dividend was paid in cash or merchandise or credited to the patron and retained by the cooperative as capital under what is sometimes called the revolving fund plan of financing, which has been adopted by many cooperatives.

The problem here presented is one of considerable importance. There are some ten thousand farmers cooperatives in United States and in 1954 some $127,-000,000 of their annual net income was distributed in the form of noncash patronage dividends, the use of which was retained by the cooperatives. The Commissioner, in his brief, states in practice the average farm cooperative pays more than half of its patronage refunds in noncash or paper form.

The Commissioner contends that his rulings permitting nonexempt cooperatives to exclude from their gross income dividends not distributed in cash or its equivalent were based upon the assumption that the dividends so distributed would be taxable to the patron. The validity of the Commissioner's assumption that patronage dividends, not having a reasonable ascertainable present market value, are taxable to the patrons has been upset by several courts of appeal. Long Poultry Farms, Inc. v. Commissioner, 4 Cir., 249 F.2d 726; Commissioner of Internal Revenue v. Carpenter, 5 Cir., 219 F.2d 635; Estate of Caswell v. Commissioner, 9 Cir., 211 F.2d 693.

The Carpenter and Long Poultry cases involved exempt cooperatives. The distinction between exempt and nonexempt cooperatives is of no importance upon the broad issue we are here considering. The statute governing exempt corporations specifically provides that patronage dividends of exempt corporations shall be taken into account in computing net income in the same manner as in the case of a nonexempt cooperative organization. Section 522(b) (2) Int.Rev.Code 1954. The Commissioner does not claim otherwise.

The patron in the Carpenter case was a cash basis taxpayer. The patron in Long Poultry paid taxes on an accrual basis. The cooperative involved in each of the cases was obligated to distribute its net margin to its patrons and did so in certificate form. The certificates issued were redeemable solely in the discretion of the directors of the cooperative. The rights of the certificate holders were subordinate to the cooperative's debts and were subject to diminution if the corporation sustained losses.

The Carpenter and Long Poultry cases hold that the patron had no real dominion or control over the funds represented by the certificates; that payments of the certificates were dependent upon the future success of the cooperative and subsequent action on the part of its directors; that the certificates had no fair market value and that the amount of the so-called patronage dividend represented by the certificate was not taxable to the patron.

During the tax years of 1953 and 1954 here involved, Regulation 118–39.22(a)–23 (corresponding regulation 1954 Code, 1.61–5) provided for the taxation of deferred dividends, such as revolving fund certificates, to be taxable to the patron in the face amount. Long Poultry was decided on November 8, 1957. On February 14, 1958, the Commissioner announced that he acquiesced in the decisions of Carpenter and Long Poultry. T.I.R. 69 (1958 CCH ¶ 6350). See also 1958–1 Cum.Bull. 4. Subsequently, by T.D.'s 6428 and 6429, 1959–2 Cum.Bull. 26, 452, the Commissioner amended Section 1.61–5 of Treasury Regulations promulgated under the Internal Revenue Code of 1954 and Section 39.22(a)–23 of Treasury Regulations 118, promulgated under the Internal Revenue Code of 1939, to conform to the decisions in these cases. Briefly, the amended provisions state that amounts allocated to a patron shall be included in the latter's income to the extent of the cash received if the allocation is in cash, and to the extent of the fair market value of merchandise, capital stock or certificates received if the allocation takes such form. For this purpose, the Regulations provide that any certificate containing an unconditional promise to pay a fixed sum of money on demand or at a determinable time shall be considered to have a fair market value at the time of its receipt by a patron, unless it is clearly established to the contrary, but that any certificate which is payable only in the discretion of the cooperative or which is subject to conditions beyond the control of the patron shall be considered not to have any fair market value unless it is clearly established to the contrary.

The Commissioner in his brief states that the reasons assigned by courts for holding certain noncash patronage dividends were not taxable to the patron would be valid cause for finding that the income represented by such certificates belongs to the cooperative. This is on the theory that the cooperative earnings are income belonging to someone, and that if the so-called dividend does not constitute income of the patron, it must remain income of the cooperative. There is considerable logic in such argument. If the question of taxability of the cooperatives, for noncash patronage dividends were an open one, such argument might be persuasive.

However, as heretofore pointed out under regulations existing for many years and in full effect during the taxable years here involved, revolving fund credits have been considered income of the patron. Moreover, as Judge Graven has demonstrated in the Birmingham case, authoritative treasury rulings starting as early as 1918 have consistently given liberal construction to cooperative dividends and have treated dividends of the type here involved excludable from the cooperative's income. This trend has not been changed by the rulings issued since the Birmingham case was decided. The Tax Court, in the present case and in its recent decision in Pomeroy, has adhered to its position that dividends evidenced by revolving fund certificates are excludable by the cooperative.

The Commissioner apparently has not up to the present time made any attempt to withdraw or amend his repeated and consistent ruling holding such dividends to be an exclusion from the cooperative's gross income. The first challenge to the broad right of the cooperatives to exclude this type of dividend is made in the present case and the Pomeroy case now before us for consideration. Even in the present case, the Commissioner did not urge the broad issue in the Tax Court but is raising it for the first time upon this appeal. Moreover, he is attempting to apply his present theory retroactively to years prior to the Long Poultry decision and to the time of his change of regulation as to treatment of such dividends.

We are not here confronted with the troublesome question of whether the Commissioner can revise his rulings as to excludability by the corporation of patronage dividends as to future years and express no view on this question.

There is no specific statute covering exclusion from gross income of dividends

paid patrons by nonexempt cooperatives. Gross income is broadly defined by § 61 I.R.C.1954, 26 U.S.C.A. § 61 and § 22 I.R.C.1939, 26 U.S.C.A. § 22. The regulations previously discussed allowing deductions for dividends paid patrons are keyed to the statutory provisions defining gross income. Many of the treasury rulings treat the dividends paid patrons as exclusions from gross income. See Farmers Cooperative Co. v. Birmingham, supra.

The so-called Iowa ruling I.T. 3208 C.B. 1938–2,127 states, in part: "Under long established Bureau practice amounts payable to patrons of cooperative corporations as so-called patronage dividends have been consistently excluded from the gross income of such corporations on the ground that such amounts in reality represent a reduction in cost to the patron of goods purchased by him through the corporation, or an additional consideration due the patron for goods sold by him through the corporation."

We are confronted with the problem in this case of whether the Commissioner has in his repeated and consistent rulings governing the treatment to be accorded noncash dividends reached a permissible conclusion on the basis of the revenue statutes as a whole, that such dividends did not constitute gross income.

In United States v. Leslie Salt Co., 350 U.S. 383, 396, 76 S.Ct. 416, 100 L.Ed. 441, the court in considering the effect to be given the treasury's earlier interpretations of revenue statutes, quotes and follows the law as stated by Mr. Justice Cardozo in Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796, reading:

"administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful. United States v. Moore, 95 U.S. 760, 763 [24 L.Ed. 588]; Logan v. Davis, 233 U.S. 613, 627 [34 S.Ct. 685, 58 L.Ed. 1121]; Brewster v. Gage, 280 U.S. 327, 336 [50 S.Ct. 115, 74 L.Ed. 457]; Fawcus Machine Corp. v. United States, 282 U.S. 375 [51 S.Ct. 144, 75 L.Ed. 397]; Interstate Commerce Comm. v. New York, N. H. & H. R. Co., 287 U.S. 178 [53 S.Ct. 106, 77 L.Ed. 248]. The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new."

In the recent case of Cory Corporation v. Sauber, 363 U.S. 709, at page 712, 80 S.Ct. 1331, 1332, 4 L.Ed.2d 1508, the court states:

"The Commissioner consistently adhered to the horsepower test for more than 10 years, and Congress did not change the statute though it was specifically advised in 1956 that that was the test which was being applied. We cannot say that such a construction was not a permissible one, cf. Universal Battery Co. v. United States, 281 U.S. 580 [50 S. Ct. 422, 74 L.Ed. 1051], especially where it continued without deviation for over a decade."

See also Farmers Cooperative Co. v. Birmingham, supra, 86 F.Supp. at page 229.

Congress in 1951 amended § 101 I.R.C. 1939, dealing with exempt cooperatives, by adding § 12(B) (65 Stat. 491 to 493). The amendment authorizes certain special deductions for exempt cooperatives, and then provides:

"Patronage dividends, refunds, and rebates to patrons with respect to their patronage in the same or preceding years (whether paid in cash, merchandise, capital stock, revolving fund certificates, retain certificates, certificates of indebtedness, letters of advice, or in some other manner that discloses to each patron the dollar amount of such dividend, refund, or rebate) shall be taken into acount in computing net income in the same manner as in the case of a cooperative organization not exempt under subparagraph (A) * * *."

(Substantially the same provision appears in § 522 I.R.C.1954.)

By such choice of language, Congress manifested an awareness of the treatment given to dividends to patrons of nonexempt cooperatives.

In Long Poultry, where the Government sought to hold the recipients of noncash patronage dividends liable for a tax on such dividends, the Government urged that the provision for dividend exclusion in the 1951 Act was granted in reliance upon testimony before the Congressional Committee that dividends would be returned for taxation by the recipients. The court answered this contention thusly:

"The answer is that Congress while granting the right to the deduction by the cooperative left the matter of taxing the dividends to the recipients to be dealt with by existing law, making no change whatever with regard thereto, with the result that cash basis taxpayers will report as income patronage dividends such as are here involved in the year when payment thereof is received and accrual basis taxpayers will report them as income for the year in which the right to receive payment becomes reasonably definite and certain." 249 F.2d at page 731, supra.

It is certain that Congress has been continuously aware of the treatment given by the Commissioner to cooperative dividends under his administrative rulings and practices. Tax problems relating to farm cooperatives, including the excludability of patronage dividends credited to the patrons' accounts and retained in a capital revolving fund, have had extensive congressional consideration. In the Senate debate on the 1951 amendment heretofore discussed, Senator Kerr quoted from G.C.M. 17895 and United Cooperatives, Inc. v. Commissioner, 4 T.C. 93, and observed that it had long been the practice of the treasury to recognize patronage allocations by cooperatives as not being income to the cooperatives. The following colloquy then took place between Senator Kerr and Senator George, chairman of the Senate finance committee:

"[Mr. Kerr.] It is my understanding that the income-tax treatment of cooperatives contained in section 314 of the bill confirms and follows this long-established administrative practice as stated in the ruling and court decision from which I have just quoted. Am I correct in this understanding?

"Mr. George. The Senator from Oklahoma is correct. Patronage allocations by cooperatives are not income to the cooperatives under this section of the bill, but are excluded from gross income of the cooperative organization.

\*   \*   \*   \*   \*   \*

"Mr. Kerr. And this then means that patronage refunds or rebates, allocated to patrons pursuant to a pre-existing contract between patrons and the cooperative, shall not be deemed to be income to the cooperative or be included in computing its net or gross income as has been true for many years past.

"Mr. George. That is a correct interpretation of the language of the bill. There is no intention whatever to treat funds allocated to patrons in any new or different way but to continue to treat them as in the past."

Congressional Record 82d Congress, 1st Sess., 1951, Vol. 97, No. 178, pp. 12202–2.

In his testimony before the Committee on Ways and Means on February 2, 1960, Mr. Robert T. Patterson as representative of the National Tax Equality Association testified and also presented a prepared statement which said in part that:

"A.   *Cooperative corporations are now permitted to deduct or exclude from taxable income profits distributed or allocated as patronage dividends.*

\*   \*   \*   \*   \*   \*

"The statute [1951 Act] made it clear that the patronage dividends of both exempt and nonexempt cooperatives should be treated alike; that is, they should be deductible or excludable in computing taxable income. This, rather oddly, was done merely by reference to the prevailing tax-exempt status of the patronage dividends of the nonexempt cooperatives, which had come about not through legislation but by means of administrative determinations accepted by court decisions. The present law merely declares that the patronage dividends of the exempt cooperatives 'shall be taken into account in computing taxable income in the same manner as in the case of a cooperative organization not exempt under section 521 [26 U.S.C.A. § 521].'

"*The Treasury Department is helpless to revise its practice.* As far back as 1914, it had allowed nonexempt cooperatives to deduct or exclude from their taxable income amounts paid or allocated according to patronage. A long-accepted administrative practice is regarded as having congressional approbation, and only the most exceptional circumstances can justify its reversal. *Thus the Treasury Department is obliged to wait upon Congress to block this avenue of escape from the Federal income tax.* Until Congress acts, it cannot be denied, the managers of cooperatives are legally justified in taking the exemption; and in terms of their duty to their organizations they are bound to make the most of this tax privilege." *Hearings Before the Committee on Ways and Means, House of Representatives, 86th Congress, 2d Sess.*, "The Subject of Tax Treatment of Earnings of Cooperatives," February 1–5, 1960, at pp. 101–102. (Emphasis added.)

Mr. Jay W. Glasmann, Assistant to the Secretary, Department of the Treasury, stressed to the Committee the need for new legislation to supplement or replace the 1951 Act. He said:

"In the President's budget message last year and again this year, the President recommended amendments to the Internal Revenue Code to provide equitable taxation of cooperatives. As you know, during the past 5 years the Treasury has several times called to the attention of the committee the fact that a series of court decisions have made largely ineffective the 1951 legislation which was intended to assure that all cooperative income would be taxed either to the cooperative or to its members as earned.

"Corrective legislation is clearly needed because under existing law it is possible for a cooperative to exclude from its taxable income certain noncash patronage dividends paid to its members which, at the same time, are not taxable to the members who receive them." *Hearings, Second Session, supra*, at p. 5.

In February of 1959, the Treasury recommendations in this area were released to the public by the Committee on Ways and Means. These recommendations were embodied in a bill, H.R. 7875, which was introduced at the first session of the Eighty-sixth Congress. This bill would have provided that cooperatives would be permitted to deduct amounts paid to the patron during the taxable year if paid (1) in cash or (2) in certificates bearing at least four percent and redeemable within three years. The patron would include in his income only the cash amounts received. *Hearings, Second Session, supra*, at p. 6. Congress failed to enact it.

■ The broad attack upon the excludability of the patronage dividends involved in this case cannot be sustained. The Commissioner has for over forty years by his rulings and administrative practices consistently authorized the exclusion or deduction from the cooperatives' gross income of the patronage dividends, including those without a present market value to the patron. Con-

gress, by the 1951 amendment authorizing patronage dividends of exempt cooperatives to be excluded in the same manner as those of nonexempt cooperatives, at least impliedly approved the Commissioner's past treatment of patronage dividends of nonexempt cooperatives. Congress, as a result of very extensive hearings, was fully aware of the treatment accorded patronage dividends and by its failure to enact proposed legislation to alter the situation acquiesced in the administrative interpretations. No effort has been made by the Commissioner to revoke or amend the rulings relied upon by the Tax Court, and such rulings apparently remain in full force and effect.

We cannot say, upon this record, that the long standing and consistent policy of the Commissioner in considering noncash dividends as excludable from income of the cooperative is not a permissible interpretation of the provisions of the revenue statutes defining gross income.

The primary responsibility for determining what should be included and excluded from income for tax purposes rests with Congress. If inequities result from the present method of taxing cooperative dividends, resort should be had to the legislative branch of the Government for appropriate relief. We reject the contention raised by the Commissioner in his broad issue.

We now reach the narrow issue. The Tax Court found that the allocation of the patronage dividends met all applicable tests and standards except that the taxpayer failed to give timely notice to each individual patron of the dollar amount of his separate share of the total patronage dividend. It is the contention of the Commissioner that such notice should be given within the period of two and one-half months of the end of the taxable year, which is the time the corporation was to file its return, or at least within eight and one-half months of the close of the year which is the time allowed exempt cooperatives for filing their returns. Thus, the issue is whether a nonexempt cooperative corporation is required to notify its patron of the dollar amount of his patronage dividend within a specific period of time as a prerequisite to its right to exclude from its gross income the patronage dividends or refunds which otherwise under the law qualified as an exclusion from gross income.

The Commissioner and the Tax Court concede that there is no express statute or regulation requiring the giving of such notice to the individual patron by a nonexempt cooperative. They rely upon statutes and regulations governing exempt cooperatives. The basis of the Tax Court's conclusion that the giving of prompt notice is a prerequisite to the exclusion is found in the following excerpts from its opinion:

"Although these provisions of the respondent's regulations do not apply directly to a taxable cooperative association, the same definition of the term 'allocation' as set forth in the above-cited provisions is made applicable to nonexempt cooperatives as well as exempt cooperatives by other provisions in the respondent's regulations governing the filing of information returns by any corporation allocating $100 or more in patronage refunds during the taxable year. Regs. 118, sec. 39.148(f)–1 (d); Income Tax Regs., sec. 1.6044–1(c).

\* \* \* \* \* \*

"Section 522(b) of the 1954 Code specifically requires allocations of patronage dividends by exempt cooperatives to be made by the date the return is due. See section 6072(d), 1954 Code [26 U.S.C.A. § 6072(d)]. The portion of the respondent's regulations here in question (Regs. 118, sec. 39.101(12)–2(b) (3) and sec. 39.148(f)–1(a) and (b); Income Tax Regs., sec. 1.522–1(b) (3) and sec. 1.6044–1(a) and (b)) read in conjunction with section 53(a) (1) of the 1939 Code [26 U.S.C.A. § 53 (a) (1)] and section 6072(b) of the

1954 Code require a taxable cooperative association to pay or allocate patronage refunds by the time its return is due if such refund is to be excludible. To sustain the contentions advanced by the petitioner would result in extending to a nonexempt cooperative association a privilege which clearly would be denied an exempt cooperative under the terms of the Code and the respondent's regulations. We are unable to find any reason for so holding."

█ We cannot agree that the provisions of § 6044 I.R.C.1954, 26 U.S.C.A. § 6044 requiring all corporations, exempt or nonexempt, to file information returns as to patronage dividends, or regulations promulgated thereunder, make statutory provisions, enacted solely with reference to exempt corporations, applicable to nonexempt corporations. Exempt corporations are given a number of benefits not enjoyed by nonexempt corporations. The fact that one statutory provision requires both exempt and nonexempt cooperatives to file information returns does not confer benefits enjoyed by exempt corporations on nonexempt corporations. Similarly, such statutes do not automatically place burdens on nonexempt corporations which are specifically fixed by statute relating solely to exempt corporations.

We do not question the fact that § 6044 requires all cooperative corporations allocating dividends to file information returns. Nothing in said statute makes the failure to file such returns a basis for the loss of the dividend exclusion. The penalty for willful noncompliance as fixed by § 6652, 26 U.S.C.A. § 6652 is $1 for each return not filed as required. The Tax Court felt that it was unlikely that Congress intended to place any greater restriction on favored exempt cooperatives than upon nonexempt cooperatives. Congress' intention must be gathered from the plain and unambiguous language used in the statute. The fact is that Congress did place language in the statute governing exempt cor-

porations, indicating that dividend allocations for a taxable year could be made during a period of eight and one-half months following the close of the taxable year. Congress further provided by § 6072(d) that an exempt corporation is given until eight and one-half months after the close of a taxable year to file its income tax returns. No like provision is made for nonexempt corporations. Section 522 I.R.C.1954 applies certain existing law as to the exclusion of dividends of nonexempt cooperatives to exempt cooperatives. We find nothing in the statute to indicate an intention to apply any of the provisions of the statutes applicable to exempt cooperatives to nonexempt cooperatives.

Of course, if there is a mandatory requirement by statute or valid regulation that certain conditions must be complied with to justify an exclusion, such requirements must be met. There is considerable room for doubt whether in the absence of a statutory requirement, a regulation, even if one existed, could reasonably require the earlier reporting of the dollar amount of dividend to each patron of a nonexempt corporation. The reason for the applicable statute · and regulation governing exempt corporations is likely that stated by the Tax Court to the effect that such provision would increase the likelihood of an early inclusion by the patron of his share of the patronage dividend credited to him on his own tax return.

As previously stated, the Commissioner has acquiesced in the Long Poultry decision and has amended his regulations accordingly, and no longer contends that a noncash dividend having no fair market value is income of the patron, in the year of allocation by the cooperative.

█ No cases have been called to our attention or found by us holding that giving notice to a patron of the dollar amount of his patronage dividend is a prerequisite to the right of a nonexempt cooperative to exclude or deduct from gross income the amount of such dividend. · Likewise, there is no express stat-

**326**

ute making such requirement. We are not here faced with the question of whether the Commissioner by regulation or ruling could validly impose a requirement that notice be given to the patron, and do not decide such question. There was no regulation or ruling in effect during the taxable years here involved requiring notice to the patron or specifying the time or nature of the notice. When the Commissioner seeks to set up new and different standards and requirements at a variance with what was considered acceptable practice before, fairness requires that the Commissioner make information as to his new standards available to affected taxpayers by regulation or in some other reasonable way.

The taxpayer here has apparently met the traditional standards applied to this situation. The total amount of the taxpayer's dividend allocated to members for 1953 was announced at a stockholders' meeting on March 12, 1954, and the 1954 allocation was announced at a stockholders' meeting on February 28, 1955. The record does not show when the individual credits were entered upon the corporation's books. The taxpayer's manager testified that after the total dividend was determined, only a mathematical computation was necessary to determine the share of each patron. A stipulation in the record shows that between April 10, 1954, and August 23, 1954, some thirty-nine patrons in purchasing stock received credit for the specified dollar amount of their 1953 patronage dividend. Thus, it would appear that information was available on the corporate books to make determination of the dollar amount of the 1953 dividend of a patron at least as early as April 1954.

We conclude that the Tax Court erred in denying taxpayer the dividend exclusions it claimed for the years 1953 and 1954.

The decision of the Tax Court is reversed.