OPINION The issues are (1) whether petitioner operated during its fiscal years 1958 and 1959 as a farmers’ cooperative which was exempt from Federal income taxes; (2) should certain amounts transferred by petitioner in 1958 and 1959 from its undistributed income account to its stated capital be treated as patronage dividends and interest payments; and (8) was petitioner entitled to deductions in 1958 and 1959 for additions to its reserve for bad debts. We must reach issues (2) and (3) only in the event that petitioner was not an exempt cooperative association. Relying on section 521(b) (2),[1] respondent has denied petitioner an exemption on two grounds. One ground was that substantially all of petitioner’s stock was not owned by producers who marketed their products through the cooperative. A second ground was that petitioner declared dividends in 1958 and 1959 in excess of 8 percent per annum on the value of the consideration for which the stock was issued. During fiscal year 1958 only about 45 percent of the shareholders delivered any butterfat to petitioner. These shareholders owned approximately 72 percent of petitioner’s outstanding stock. During fiscal year 1959 only about 43 percent of the shareholders delivered any butterfat to petitioner. These shareholders owned approximately 70 percent of petitioner’s outstanding stock. The remaining shareholders either had discontinued dairy production or preferred to sell their butterfat to companies such as Safeway, Borden, and Foremost. Recently the Court of Appeals for the Eighth Circuit has stated that this Court is on sound ground in concluding that section 521(b) requires current patronage by shareholder-producers of the cooperative. Co-Operative Grain & Supply Co. v. Commissioner, 407 F. 2d 1158 (C.A. 8, 1969), remanding for further proceedings a Memorandum Opinion of this Court. The Court of Appeals for the Eighth Circuit remanded the case to afford the taxpayer an opportunity to produce additional evidence on the question of current patronage. In the case at bar, we have considered as shareholder-producers only those patrons who delivered some butterfat to petitioner during 1958 and 1959.[2] Section 521 does not define the term “substantially all.” For purposes of the instant case, we do not deem it necessary to decide exactly what percentage will be sufficient for purposes of section 521. In any event, we do not think that 70 or 72 percent is enough under the facts in this case to constitute “substantially all.” Since we agree with respondent on his first ground that petitioner was not exempt from Federal income taxes for the years in issue, we need not decide whether respondent was also correct on his second ground. Since petitioner was not exempt from Federal income taxes for its fiscal years 1958 and 1959, we must decide the character for tax purposes of certain amounts capitalized by petitioner in those years. On June 25, 1958, petitioner’s board of directors resolved that the sum of $1 per share for each share of stock outstanding as of June 30, 1958, be transferred from undistributed income for fiscal year 1958 to the stated capital account. The directors further resolved that the total remaining undistributed income be distributed to patron-shareholders on a per-pound butterfat basis on butterfat shipped to petitioner during fiscal year 1958. An identical motion was carried with respect to fiscal year 1959 except that the amount transferred to stated capital was $1.12 per share. Petitioner’s position is that the capitalizations of $1 and $1.12 per share were patronage dividends to the extent paid to shareholder-patrons and interest payments to the extent paid to nonpatron shareholders. If the amounts capitalized were patronage dividends, they would properly be an item in the cost of goods sold of petitioner. As such, they would be a deduction from gross sales. Although this principle is not based on any provision of the Code, the courts and administrative rulings have long recognized it.[3] The theory is that such dividends are in reality rebates or refunds upon business transacted by the corporation with its shareholders. Since the corporation is under an obligation to make the refunds, the corporation need not initially include the amounts in gross income. Clover Farm Stores Corporation, 17 T.C. 1265 (1952), acq. 1952-1 C.B. 1. An allocation of earnings by a cooperative to its patrons will not qualify as a true patronage dividend unless three requirements are met. The first one is that the allocation must be made pursuant to a legal obligation which existed at the time the participating patrons transacted their business with the cooperative. The second requirement is that the allocation must be made out of profits or income realized from transactions with the particular patrons for whose benefit the allocation was made. The third requirement is that the allocation of earnings must be made ratably to the particular patrons whose patronage created the income from which the allocated refund was made. Famers Cooperative Co., 33 T.C. 266 (1959), reversed on other grounds 288 F. 2d 315 (C.A. 8, 1961). We have limited the scope of our inquiry to the first and third requirements. The amounts of $1 and $1.12 per share transferred to stated capital met neither of these requirements. As regards the first requirement, petitioner has produced no evidence that the amounts in issue were credited to shareholders pursuant to a legal obligation arising from the delivery of butterfat to petitioner. At the trial the general manager of petitioner testified: Q. Did this stock dividend require a declaration of the board of directors? A, Tes. Q. Was there any agreement or understanding between the Petaluma Co-Op and its shareholders that a stock dividend would be made in any particular year? A. Never. This was not determined until the last meeting — the last board meeting in June. Q. So that there was no enforceable obligation on the part of Petaluma CoOperative to make a stock dividend? A. No. Regarding the third requirement, the amounts in issue were credited only to shareholders of record at the mid of each fiscal year. Shareholders who had already sold their shares were not entitled to a rebate on the basis of earnings during the fiscal year. Moreover, as to those shareholders who did receive credits for the amounts in issue, the allocation was not in proportion to the amount of butterfat sold by each shareholder to petitioner. Accordingly, we conclude that the amounts of $1 and $1.12 per share which petitioner transferred to stated capital were not patronage dividends. Peoples Gin Co. v. Commissioners, 118 F. 2d 72 (C.A. 5, 1941), affirming 41 B.T.A. 343 (1940). The position of petitioner that the amounts capitalized were interest payments to the extent paid to nonpatron shareholders is without merit. As noted above, there is no evidence in the record that petitioner was ever liable for such amounts prior to the dates of the resolutions by the board of directors. The final issue presented is whether petitioner was entitled in fiscal years 1958 and 1959 to deductions for additions to its reserve for bad debts. The amounts of these additions were $19,757.51 in 1958 and $55,778.39 in 1959. Section 166(c) allows a deduction for a reasonable addition to a reserve for bad debts. Such deduction is in lieu of deducting debts which become worthless within the taxable year. Section 166 (c) grants the Commissioner discretion in determining the amounts of reasonable additions to the reserve for bad debts. The Commissioner will be overruled only where there is a dear showing of abuse of discretion. Though the taxpayer’s approach might be more philosophically accurate, such accuracy does not show an abuse of discretion by the Commissioner. United States v. Haskel Engmeering & Supply Co., 880 F. 2d 786 (C.A. 9, 1967). The ultimate question is whether petitioner’s reserve at June 30 of each year was adequate to cover the expected worthlessness on outstanding notes and accounts receivable. If the reserve was adequate without any addition, no deduction is allowable for an addition to the reserve in that taxable year. Roanoke Vending Exchange, Inc., 40 T.C. 735 (1963). Petitioner urges that the Commissioner’s determination was arbitrary and amounted to an abuse of his discretion. Furthermore, petitioner contends that its additions to the reserve were reasonable because they were needed to cover the expected worthlessness of the substantial amounts which Piers owed petitioner.[4] The respondent considered the following factors in reaching his decision resulting in the disallowance of petitioner’s additions to its reserve for bad debts. For instance, petitioner consistently acted as though it did not anticipate losses on its accounts with Piers. Petitioner’s sales to Piers increased from $408,422 in 1957 to $503,262 in 1958. In 1959 its sales to Piers were $471,326. Piers’ payments to petitioner were $402,136 in 1958 and $468,435 in 1959. Although these payments were insufficient to cover Piers’ purchases in those years or to reduce balances on outstanding amounts due, petitioner never seriously considered discontinuance of milk sales to Piers. Nor has petitioner ever considered enforced collection of its receivables. In view of the factors weighted by the Commissioner at the time of his determination, we do not think he was arbitrary or committed an abuse of his discretion. We have considered Calano, Inc. v. Commissioner, 304 F. 2d 650 (C.A. 9, 1962), reversing and remanding a Memorandum Opinion of this Court. The Court of Appeals for the Ninth Circuit stated that Commissioner had exercised his discretion under an erroneous conception that the circumstances particularly affecting a specific debt must be completely disregarded in determining the reasonableness of additions to reserve. The instant case is distinguishable from Oalavo, Inc. In the case at bar the Commissioner did take into consideration the circumstances specifically affecting the Piers debt in determining what should be a reasonable addition to petitioner’s bad debt reserve. Decision will be entered for the respondent. All statutory references are to the Internal Revenue Code of 1954. Sec. 521(b) (2) provides: SBC. 521. EXEMPTION OB FARMERS’ COOPERATIVES PROM TAX. (b) (2) Organizations having capital stock. — Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 percent' per annum, whichever is greater, on the- value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned .by producers who market their products or purchase their supplies and equipment through the association. For purposes of the immediate case, we have not considered it necessary to consider the question of the amount or quantity of products •which currently must be sold to the cooperative. Cf. fn. 10 in Co-Operative Grain & Supply Co. v. Commissioner, 407 F. 2d 1158 (C.A. 8, 1969), remanding for further proceedings a Memorandum Opinion of this Court. For taxable years beginning after Dec. 31, 1962, subch.-T of chapter 1 expressly excludes patronage dividends from the gross income of nonexempt cooperatives. Petitioner also Introduced into evidence an appraisal of Piers. The appraisal was made to determine the fair market value of Piers’ properties as residential land. The appraisal disregarded the current use of the properties for dairy purposes.